UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL PENA, | ) |
| Plaintiff, | ) |
| v. | ) No. 20 C 3352 |
| | ) Judge Sara L. Ellis |
| CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748; CHICAGO POLICE OFFICER MARIBEL ROSARIO, STAR #13512; CHICAGO POLICE OFFICER RUPERT COLLINS, STAR #4430; UNKNOWN CHICAGO POLICE OFFICERS; and CITY OF CHICAGO, a municipal corporation, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Defendant Chicago Police Officer Wilfredo Ortiz allegedly beat Plaintiff Daniel Pena while he was handcuffed at the 20th District police station. Defendant Officers Maribel Rosario and Rupert Collins purportedly helped Ortiz cover up the incident, including by filing false police reports. In response, Pena has filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Ortiz, Rosario, and Collins (the "Defendant Officers"), other unknown Chicago police officers, and the City of Chicago. Pena brings claims for excessive force, assault and battery, and intentional infliction of emotional distress against Ortiz (Counts I, III, and IV). He also claims that the Defendant Officers engaged in a civil conspiracy pursuant to § 1983 and state law (Counts II and V) and seeks to hold the City liable on *Monell*, *respondeat superior*, and indemnification theories (Counts III, IV, V, VI, and VII). Pena seeks monetary damages against all Defendants, as well as injunctive relief against the City. The Defendant Officers and the City have moved to dismiss the conspiracy claims, and the City also seeks dismissal of Pena's request

for injunctive relief. The Court rejects the Defendant Officers' and the City's arguments as to the conspiracy claims because Pena's allegations suggest that the intracorporate conspiracy doctrine does not apply and he only seeks to hold the City liable on the state conspiracy claim under a *respondeat superior* theory. But because Pena has not alleged that he faces a real threat of future harm, he cannot pursue injunctive relief against the City.

## BACKGROUND[1]

On June 14, 2019, as Pena walked along Lawrence Avenue, the Defendant Officers approached him, claiming they had received Pena's description in relation to an earlier disturbance. Ortiz tackled Pena to the ground, and the Defendant Officers then arrested him and took him to the 20th District police station. While Pena awaited processing and sat on the floor in handcuffs, Ortiz struck Pena with his baton in the shoulder area, splitting Pena's collarbone in two, causing the bone to jut out. Ortiz and other unknown officers continued beating and kicking Pena multiple times.

Ortiz worked with Rosario and Collins to prepare false police reports that covered up the beating. Rosario's report omits mention of the beating and Pena's serious injuries, noting only that Pena requested medical attention while at the police station and that an ambulance then transported Pena to Swedish Covenant Hospital for evaluation. Collins' report similarly states only that the police called for an ambulance while Pena was at the police station and that a doctor treated Pena at Swedish Covenant for a laceration and swelling to his right eye and a right shoulder injury. Collins noted that Pena only had minor injuries.

---

[1] The Court takes the facts in the background section from Pena's complaint and presumes them to be true for the purpose of resolving the motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (Rule 12(b)(6); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (Rule 12(b)(1)).

Pena was charged with aggravated assault and resisting or obstructing arrest. The state court found Pena not guilty of all charges after reviewing body camera footage of his arrest. Pena remains in pain and his range of motion on his right side remains limited. Meanwhile, Ortiz has escaped discipline from the City for this and other instances of alleged misconduct.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly-Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Conspiracy Claims

Pena brings conspiracy claims against the Defendant Officers under § 1983 and state law, alleging that the Defendant Officers conspired to prepare false police reports and otherwise cover up Ortiz's use of excessive force. To support conspiracy liability under § 1983, Pena must allege "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). A civil conspiracy claim under Illinois law has similar elements, requiring allegations of "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004).

The Defendant Officers do not challenge whether Pena has sufficiently alleged his conspiracy claims. They instead argue that qualified immunity bars Pena's § 1983 conspiracy claim because caselaw does not clearly establish whether the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims. They also argue that the intracorporate conspiracy doctrine bars the state law civil conspiracy claim. The City joins the Defendant Officers' motion with respect to the state law claim.

### A. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability police officers who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). At this stage, to overcome an assertion of qualified immunity, Pena must have alleged a violation of a statutory or constitutional right that was clearly established at the time of the violation so that a reasonable officer would have known of the unlawfulness of his conduct. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020).

The Defendant Officers focus on the applicability of the intracorporate conspiracy doctrine to Pena's § 1983 conspiracy claim. The intracorporate conspiracy doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, --- U.S. ----, 137 S. Ct. 1843, 1867 (2017). The Seventh Circuit has extended the intracorporate conspiracy doctrine to claims under § 1985. *See Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). And the Sixth Circuit has concluded that the rationale for applying the doctrine to § 1985 applies equally to § 1983 conspiracy claims. *Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019). As the Defendant Officers acknowledge, however, the Seventh Circuit has not explicitly held that the intracorporate conspiracy doctrine bars § 1983 claims against police officers who conspire to violate an individual's constitutional rights. In an unpublished opinion discussing a § 1983 conspiracy claim, the Seventh Circuit stated in dicta that "a conspiracy claim has no role to play" where all the defendants are public employees, relying on caselaw under § 1985(3). *Scott v. City of Chicago*, 619 F. App'x 548 (Mem) (7th Cir. 2015). Courts in this district are split

as to the doctrine's applicability in police misconduct cases. *See Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1085 (N.D. Ill. 2015) (comparing cases addressing the doctrine's application to § 1983 claims). *Compare Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020) ("There is reason to doubt, however, that this corporate-based and antitrust-based doctrine should apply to civil-rights conspiracy claims under § 1983."); *Piercy v. Warkins*, No. 14 CV 7398, 2017 WL 1477959, at *19–20 (N.D. Ill. Apr. 25, 2017) (collecting cases that did not apply the intracorporate conspiracy doctrine to § 1983 conspiracy claims), *with Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1210 & n.6 (N.D. Ill. 2018) (collecting cases and applying doctrine to § 1983 conspiracy claim). The Defendant Officers argue that this shows that the law is not clearly established on the issue of whether police officers can conspire amongst themselves, meaning that qualified immunity bars Pena's claim. *See Haliw*, 2020 WL 1304697, at *4 ("Liability is not clearly established for conspiracies amongst police officers of a single municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims.").[2]

       The Court cannot find that qualified immunity applies here, however, because the intracorporate conspiracy doctrine does not apply to the facts Pena has alleged in his complaint. As another court in this district that considered the Defendant Officers' argument recently noted, "[t]he doctrine applies only when the agents of a corporation or government entity act within the scope of their employment in joint pursuit of the entity's lawful business." *Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020). In other words, in police misconduct cases such as that before the Court, the doctrine does not apply where the alleged illegal conduct is "not the product of routine police department decision-making."

---

[2] The *Haliw* court raised the qualified immunity implications of the intracorporate conspiracy doctrine *sua sponte* and so did not have the benefit of adversarial presentation in reaching its conclusion. 2020 WL 1304697, at *5.

*Salaita*, 118 F. Supp. 3d at 1085 (quoting *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000)). Courts also have found an exception where the alleged conspiracy forms "part of some broader unlawful pattern that permeates the ranks of the organization's employees." *Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016). Here, Pena has alleged facts to fit into both exceptions, suggesting that the Defendant Officers' actions in falsifying the police reports about Pena's arrest fell outside of routine police practice and that the City has a pattern and practice of covering up the use of excessive force by its officers. Consequently, the allegations remove the conspiracy claims from the reach of the intracorporate conspiracy doctrine, making the Defendant Officers' arguments regarding qualified immunity inapplicable at the motion to dismiss stage. *See Harris*, 2020 WL 7059445, at *5 ("[r]ecent uncertainty over the intra-corporate conspiracy doctrine's application to § 1983 cases does not create an opening for qualified immunity on behalf [of] the defendant officers" where the intracorporate conspiracy doctrine does not apply to the facts alleged in the complaint).

      B.      **State Law Conspiracy Claim**

The Defendant Officers largely repeat the same arguments with respect to the § 1983 conspiracy claim in support of dismissal of the state law civil conspiracy claim, arguing that the intracorporate conspiracy doctrine bars any such claim. Illinois' articulation of the intracorporate conspiracy doctrine generally tracks the federal doctrine discussed above, providing that no conspiracy can exist "between a principal and agent because the acts of an agent are considered in law to be the acts of the principal." *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 738 (2009). Illinois also recognizes two exceptions to the intracorporate conspiracy doctrine: "(1) when a conspirator acts out of self-interest rather than in the principal's

7

interest; or (2) when the scope of the act goes beyond the conspirator's official duties." *Bryant v. QuiBids LLC*, No. 11-cv-1013, 2012 WL 394154, at *5 (N.D. Ill. Feb. 3, 2012). As discussed above, the complaint suggests that the Defendant Officers were not acting in the City's interests when they falsified police reports and attempted to cover up the use of excessive force against Pena. At this stage, then, the Court cannot find that the intracorporate conspiracy doctrine precludes Pena from proceeding against the Defendant Officers on his state law conspiracy claim.

As for the City's arguments for dismissal of the state law conspiracy claim, the City ignores that Pena only seeks to hold the City liable for the Defendant Officers' actions on a theory of *respondeat superior*. *See* Doc. 1 ¶ 104; Doc. 28 at 11 ("The Complaint seeks to hold the City liable under *respondeat superior* for the conspiratorial actions of its officers, who prepared false police reports, failed to document and misrepresented Plaintiff's injuries, and turned a blind eye to and failed to report Ortiz's beating of the Plaintiff."). Therefore, the Court does not find it appropriate to dismiss the City from this claim.

## II.  Request for Injunctive Relief

Finally, the City argues that the Court should dismiss Pena's request for injunctive relief because he does not have standing to seek such relief and, to the extent he does, the requested relief does not meet the requirements of Federal Rule of Civil Procedure 65(d). The Court need only address the standing requirement.

To establish standing to seek injunctive relief, a plaintiff must allege a threat of future harm that is not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) ("Because an injunction is a forward-looking remedy, a plaintiff seeking this form of relief has standing to sue for an alleged

future injury only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

In his prayer for relief, Pena requests that the Court award him "[i]njunctive relief against the City that will address its widespread policies and practices, including legitimate review of all previous complaints regarding the Defendant Officers' actions as Chicago Police Officers." Doc. 1 at 24. Although Pena alleges that Ortiz has a history of misconduct and that the City's policies have allowed Ortiz's misconduct to continue, he does not include any allegations that the Defendant Officers' or the City's actions pose a threat of future harm to him personally. Moreover, even if he had done so, any hypothetical injury arising from the Defendant Officers' or City's allegedly "criminal or unconstitutional behavior" would be "too remote or attenuated to sustain" the Court's jurisdiction. *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012); *Polk v. Dent*, No. 13 CV 9321, 2015 WL 2384601, at *3 (N.D. Ill. May 19, 2015) ("In order for Plaintiffs to allege a controversy regarding the City's prospective conduct, they must plausibly claim that they themselves are likely to be repeat victims of the unconstitutional practices in the imminent future. . . . Not only do Plaintiffs fail to allege the likelihood of these future events, but even if they did, such allegations would be purely speculative and too attenuated to confer standing.").

Pena all but admits that he has not sufficiently alleged that he faces a threat of future harm in his response to the City's motion to dismiss, arguing instead that Ortiz's past misconduct and the City's lack of a response "make clear that it is only a matter of time before another

9

innocent person is unjustifiably shot or beaten . . . because the City allows Officer Ortiz to believe he is above the law." Doc. 28 at 3. In other words, Pena seeks to pursue injunctive relief on behalf of future third party victims. But Pena cannot "bring generalized claims of municipal misconduct on behalf of other citizens." *Polk*, 2015 WL 2384601, at *3; *see also Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004) ("Unless the same events are likely to happen again *to him* there is no controversy between him and the City about the City's future handling of other arrests. . . . He represents his own interests, not those of third parties."). Because Pena has not adequately alleged that he faces a real threat of future harm, he does not have standing to seek injunctive relief from the City.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's motion to dismiss [20] and denies the Defendant Officers' motion to dismiss [18]. The Court dismisses Pena's request for injunctive relief without prejudice.

Dated: February 23, 2021

_____
SARA L. ELLIS
United States District Judge