62368-LSK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DANIEL PENA,

               Plaintiff,

    v.

CHICAGO POLICE OFFICER WILFREDO
ORTIZ, STAR #9748; CHICAGO POLICE
OFFICER MARIBEL ROSARIO, STAR #13512;
CHICAGO POLICE OFFICER RUPERT
COLLINS, STAR #4430; UNKNOWN CHICAGO
POLICE OFFICERS; and CITY OF CHICAGO,
a municipal corporation,

               Defendants.

No. 20 CV 03352

Judge Sara L. Ellis

## DEFENDANT OFFICERS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COME Defendants, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, CHICAGO POLICE OFFICER MARIBEL ROSARIO, STAR #13512, and CHICAGO POLICE OFFICER RUPERT COLLINS, STAR #4430, ("Defendant Officers"), by and through their attorneys, Querrey & Harrow, Ltd., and for their Answer and Affirmative Defenses to Plaintiff's Complaint, state as follows:

## INTRODUCTION

1.    Plaintiff Daniel Pena suffered a vicious beating by Chicago police officers while handcuffed on the floor of the 20th District police station after being arrested on trumped up charged of which he was ultimately found not guilty. Mr. Pena was struck with a baton and repeatedly kicked in the face and about the body, leaving him with a disfigured shoulder that still has not healed a year later and significantly impacts his ability to earn a living. This attack was

entirely unprovoked and unjustified, and intended solely to inflict severe pain and serious injuries upon Mr. Pena.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 1. Further answering, Defendant Officers deny that any wrongful conduct or deprivation of Plaintiff's rights occurred or that Plaintiff is entitled to any recovery in this matter.

2.      As terrible at this incident was for Mr. Pena, it becomes even worse when considered in the context of the officers involved and the reasons behind their actions. The primary orchestrator of the attack on Mr. Pena, and the officer who disfigured Mr. Pena's shoulder – Defendant Officer Wilfredo Ortiz – was empowered to act because the City refused to address his extensive history of misconduct and allowed him to continue to abuse his police powers with impunity. Prior to this incident, Ortiz was not disciplined despite the fact that he: (1) was singled out in the Department of Justice's Investigation of the Chicago Police Department as an abusive officer who exemplifies the Department's Code of Silence; (2) was singled out in the City's own Police Accountability Task Force Report for his inconsistent statements regarding his shooting of Michael, Princeton, and Kierra Williamson; (3) has been the subject of multiple media reports and lawsuits regarding his misconduct; (4) forced the city to pay out over $8 million after a jury returned a verdict against Ortiz and the City in relation to the Williamson shooting; and (5) has been the subject of multiple other complaints that should have resulted in discipline or termination if they had been legitimately investigated.

**ANSWER:** Defendant Officers deny any and all allegations of wrongdoing and violations of Plaintiff's rights in this case. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the unrelated allegations and conclusions regarding Officer Ortiz contained in paragraph 2. Defendant Officer Ortiz admits that he has been

named a defendant in civil lawsuits and that the jury awarded a verdict in favor of the Williamson plaintiffs, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations directed at the City contained in paragraph 2. Further answering, Defendant Officer Ortiz denies any allegations of wrongdoing.

3.      The City's Code of Silence continues to enable Chicago Police Department members like Defendant Officer Ortiz and the other Defendant officers to use and cover up excessive force without consequence.  Although the Defendant Officers could see a bone protruding from Plaintiff's shoulder and significant swelling and bruising on his face, and lockup keepers took a mugshot photo clearing showing these injuries, the Defendant Officers felt no need to explain or document Plaintiff's serious injuries in their police reports.  Defendants' reports are utterly silent on how Plaintiff ended up in the hospital with a bone jutting out of his shoulder and a seriously swollen face, indicating that they believe their actions will not be subject to any type of scrutiny or legitimate review.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 3. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

4.      Plaintiff brings this action not only to recover damages for the violation of his constitutional rights and his serious injuries, but also for injunctive relief to address the City's enduring policies and practices that allow incidents like this to continue to happen time and time again.

**ANSWER:** Defendant Officers admit that Plaintiff's prayer for relief seeks these damages, and state that the request for injunctive relief has been dismissed. Defendant Officers deny the remaining allegations contained in paragraph 4, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

## PARTIES, VENUE, & JURISDICTION

5.      Plaintiff Daniel Pena is and was at all relevant times a resident of this judicial district.

**ANSWER:** Upon information and belief, admitted.

6.      Defendant Chicago Police Officers Wilfredo Ortiz, Star #9748; Maribel Rosario, Star #13512; Rupert Collins, Star #4430; and Unknown Officers are and were at all relevant times residents of this judicial district employed by Defendant City of Chicago as police officers and acting under color of law.

**ANSWER:** Defendant Officers admit that they were residents of this judicial district and employed by the Chicago Police Department at all relevant times. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the "Unknown Officers."

7.      Defendant City of Chicago is a municipal corporation in this judicial district organized under the laws of the State of Illinois.

**ANSWER:** Defendant Officers admit that Defendant City of Chicago is a municipal corporation in this judicial district organized under the laws of the State of Illinois.

8.      The Court has personal jurisdiction and venue is proper, because the parties are residents of this judicial district and the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

**ANSWER:** Defendant Officers admit that this Court has personal jurisdiction over this matter and that venue is proper. Defendant Officers deny, however, any and all allegations of wrongdoing and violations of Plaintiff's rights.

9.    The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, because Plaintiff asserts constitutional violations under 42 U.S.C. § 1983.  The Court has supplemental jurisdiction over Plaintiff's state law counts under 28 U.S.C. § 1367.

**ANSWER:** Defendant Officers admit that this Court has jurisdiction over this matter, but deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

## THE JUNE 2019 BEATING OF PLAINTIFF

10.    On the evening of June 14, 2019, Plaintiff was walking home when he was approached by the Defendant Officers on Lawrence Avenue in Chicago and immediately tackled to the ground by Defendant Officer Ortiz.

**ANSWER:** Defendant Officers admit that Plaintiff was approached by Defendant Officers on Lawrence Avenue on the evening of June 14, 2019. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff was walking home. Defendant Officers deny the remaining allegations contained in paragraph 10. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

11.    Defendants claimed that they were given a description of Plaintiff in relation to an earlier disturbance.

**ANSWER:** Defendant Officers Rosario and Collins admit that they were responding to a call of a gang disturbance at Loafer's Bar, located at 2600 W. Lawrence, in which a man was trying to hit people and was throwing up gang signs and that Plaintiff matched the offender's description. Defendant Ortiz admits he was traveling to an unrelated call, observed Plaintiff's conduct and stopped to assist officers.

12.    The Defendant Officers arrested Plaintiff and transported him to the 20th District police station.

**ANSWER:** Defendant Officers admit that Plaintiff was arrested and transported to the 20th District police station. Defendant Officers deny that they transported Plaintiff to the 20th District police station. Further answering, Defendant Officers deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

13.     While Plaintiff was awaiting processing at the 20th District, Defendant Officer Ortiz and Unknown Officers sat Plaintiff on the ground in handcuffs and proceeded to deliver a sadistic beating.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 13. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the "Unknown Officers."

14.     Defendant Officer Ortiz pulled out his baton and struck Plaintiff in the shoulder/ collar bone area, splitting Plaintiff's bone in two. Defendant Officer Ortiz and Unknown Officers could see the bone jutting out of Plaintiff's shoulder area after Ortiz delivered this baton strike.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 14. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the "Unknown Officers."

15.     Defendant Officer Ortiz and Unknown Officers nevertheless continued beating Plaintiff despite seeing the serious injury they inflicted upon him. Defendant Officer Ortiz and Unknown Officers did not just strike, but kicked Plaintiff multiple times in the face and about the body while he was handcuffed and defenseless on the ground.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 15. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the "Unknown Officers."

16.     Plaintiff was in excruciating pain throughout this beating with his hands handcuffed behind his back, rendering him unable to cover up his face or protect the bone jutting out of his shoulder area.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 16. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

17.     Defendant Officer Ortiz and Unknown Officers showed no remorse for their conduct and believed they could act with impunity. In fact, after causing Plaintiff serious injuries, they all looked at Plaintiff writhing in pain and laughed.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 17. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the "Unknown Officers."

18.     To cover up the serious injuries they inflicted upon Plaintiff, Defendant Officer Ortiz and Unknown Officers conspired with Defendant Officers Rosario and Collins to prepare false police reports attempting to paper over their egregious misconduct.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 18. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

19.     Defendant Officer Rosario, who attested to Plaintiff's arrest report under penalty of perjury, conspicuously omitted any mention of Plaintiff's beating and serious injuries from the report.  The report does not explain how Plaintiff injuries were incurred.

**ANSWER:** Defendant Officers admit that Officer Rosario attested to Plaintiff's June 14, 2019 arrest report under penalty of perjury. Based on information and belief, Defendant Officers deny the remaining allegations contained in paragraph 19. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

20.     Rosario's report merely claims that: "ONCE IN THE DISTRICT, THE OFFENDER REQUESTED EMS. AMB 46 ARRIVED AND TRANSPORTED THE OFFENDER TO SWEDISH COVENANT HOSPITAL FOR EVALUATION."

**ANSWER:** Defendant Officers admit the June 14, 2019 arrest report contains the quoted sentence, but deny the remaining allegations contained in paragraph 20.

21.     Defendant Officer Rosario's report falsely implies – but does not directly state- that Plaintiff's injuries were suffered on scene in the course of allegedly resisting arrest, although Rosario was on the scene and saw firsthand this was not true.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 21. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

22.     Defendant Officer Collins prepared a false case report likewise omitting any mention of Plaintiff's beating or explanation of how his injuries occurred, and grossly understanding Plaintiff's injuries.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 22. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

23.     Like Defendant Officer Rosario's arrest report, Defendant Officer Collins' case report falsely implies without directly stating that Plaintiff was injured on scene in the course of resisting arrest, although Collins was on scene and knew this was not true.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 23. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

24.     Defendant Officer Collins' case report states: "WHILE IN THE DISTRICT CFD AMBULANCE #46 WAS CALLED TO SEE THE OFFENDER. THE OFFENDER WAS THEN TRANSPORTED TO THE HOSPITAL TO BE SEEN (SWEDISH COVENANT) BY DR. HAPEMAN. OFFENDER SUFFERED A LACERATION AND SWELLING TO THIS RIGHT EYE AND RIGHT SHOULDER INJURY."

**ANSWER:** Defendant Officers admit that Officer Collins' case report contains the quoted sentence contained in paragraph 24.

25.     Defendant Officer Collins' case report falsely describes the extent of Plaintiff's injuries as "Minor" and the type of injury as "None Visible" aside from a "Laceration":

| Injury Info | | | |
|---|---|---|---|
| CPD First Aid Given? | Yes | Injury Extent: Minor | |
| Responding Unit: | | Hospital: Swedish Covenant | |
| Type | | | Weapon Used |
| Laceration | | | Hand/Feet/Teeth/Etc. |
| None Visible | | | Hand/Feet/Teeth/Etc. |

**ANSWER:** Defendant Officers admit this paragraph accurately reflects a portion of Defendant Officer Collins's Original Case Incident Report, but deny the remaining allegations contained in paragraph 25.

26.     The mugshot photo taken when Plaintiff was processed demonstrates the patent falsity of the Defendant Officers' reports. The mugshots photo clearly shows the protrusion of a

bone from Plaintiff's right shoulder area in addition to significant bruising and swelling around his right eye:



**ANSWER:** Defendant Officers admit the booking photograph of Plaintiff depicted in this paragraph was taken when Plaintiff was processed, but deny that the photograph "demonstrates the patent falsity of the Defendant Officers' reports." Defendant Officers lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations contained in paragraph 26.

27.     A number of charges were leveled against Plaintiff to justify his arrest and cover up the vicious beating he suffered, including Aggravated Assault and Resisting or Obstructing arrest.

**ANSWER:** Defendant Officers admit that Plaintiff was charged with multiple crimes relating to his June 14, 2019 arrest on Lawrence Avenue, including Aggravated Assault and Resisting or Obstructing arrest, but deny the remaining allegations contained in paragraph 27. Defendant Officers further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

28.      Plaintiff was found not guilty of all charges after the criminal court reviewed the body camera footage of Plaintiff's arrest.

**ANSWER:** Defendant Officers admit that Plaintiff was found not guilty of all charges, but lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations contained in paragraph 28. Defendant Officers deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

29.      As a result of this incident, Plaintiff was not only suffered substantial pain and suffering and mental and emotional anguish, but also disfigurement of his shoulder that continues to cause him pain and suffering and affect his ability to earn a living.

**ANSWER:**  Defendant Officers lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations contained in paragraph 29. Defendant Officers deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

30.      Plaintiff bone has not healed and the protrusion in Plaintiff's right shoulder area remains, severely limiting Plaintiff's range of motion.  This is especially problematic, because Plaintiff is a painter and relies heavily on his right arm to make a living.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations contained in paragraph 30. Defendant Officers deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

## THE CITY'S FAILURE TO ADDRESS ORTIZ'S MISCONDUCT

31.     The City continually enabled Defendant Officer Ortiz by repeatedly turning a blind eye to his use of excessive force and other misconduct since he joined the Police Department in 2008.  The Invisible Institute's Citizens Police Database shows that Ortiz ranks in the 99.7th percentile in the frequency of use of force, and has never been disciplined despite multiple instances of misconduct.  *See* https://beta.cpdp.co/officer/21455/wilfredo-ortiz/. The City's failure to discipline Ortiz includes the following particularly egregious incidents:

**ANSWER:** Defendant Officer Ortiz denies any and all allegations and conclusions of wrongdoing. Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 31.

### *Jacobs Shooting*

32.     The City's now-defunct Independent Police Review Authority (IPRA) took no action against Defendant Officer Ortiz in relation to the May 25, 2011 shooting, beating, and tasering of Stephani Jacobs.  After Ortiz's partner shot five times into Jacobs' vehicle as she was exiting a gas station, striking Jacobs in the left breast and right back, Ortiz and a group of officers took Jacobs into custody, threw her to the ground, and tasered her multiple times.  In his use of force report regarding this incident, Ortiz reported that he delivered multiple "open hand strikes" to Jacobs while she was on the ground after being shot and tasered multiple times. IPRA did not impose discipline in relation to this incident, and found Jacobs' shooting justified.

**ANSWER:** Defendant Officer Ortiz admits that his partner was involved in a shooting on May 25, 2011, and that Officers needed to use force reasonable under the circumstances in order to take her into custody. Defendant Officer Ortiz further admits that IPRA did not impose discipline in relation to the incident and found the shooting justified. Defendant Officer Ortiz denies the

remaining allegations contained in paragraph 32, and further denies any and all allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 32.

### *Miller Shooting*

33.     In 2013, Defendant Officer Ortiz discharged his firearm at an individual named Samuel Miller.  Demonstrating his pattern of patently false police reports, Officer Ortiz claimed that Miller took a "tactical stance" and pointed a black object in his direction.  Miller was unarmed and only carrying a cell phone.  Once again, the City did nothing and Ortiz was not disciplined.

**ANSWER:** Defendant Officer Ortiz admits that he discharged his firearm at an individual named Samuel Miller in 2013, and that he was not disciplined for doing so. Defendant Officer Ortiz denies as phrased the remaining allegations contained in paragraph 33, and further denies any and all allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33.

### *Stokes False Arrest*

34.     On November 2, 2015, Defendant Officer Ortiz and his partner falsely stopped and arrested Charles Stokes, fabricating a claim that a gun was found during an unlawful search of Stokes' vehicle.  Less than three weeks later, Ortiz and his partner unlawfully stopped and falsely arrested Stokes again, this time taking Stokes' car keys, unlawfully searching his vehicle, and falsely claiming that they recovered drugs from Stokes.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 34. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 34.

13

35.     After falsely arresting Stokes for possession of a controlled substance, Defendant Officer Ortiz and his partner told Stokes and his co-arrestee Curtis Cooper that they needed to come up with a gun to avoid going to jail.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 35. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 35.

36.     Cooper arranged to purchase a gun to secure Stokes' release.  After a gun was tendered, Stokes was released.

**ANSWER:** Defendant Officer Ortiz admits that officers learned of the location of multiple firearms during the course of a narcotics investigation and that Stokes was released, but denies the remaining allegations contained in paragraph 36. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 36.

37.     Defendant Officer Ortiz and his partner then told Stokes that he needed to get another gun or Cooper would be jailed.  Ortiz and his partner ordered Stokes to obtain or buy an illegal gun and turn it over to them.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 37. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 37.

38.     Stokes arranged to purchase the weapon and dropped the firearm in a garbage can for Ortiz and his partner to retrieve.  Video recorded by Stokes shows the officers retrieving the gun from the garbage can to consummate their scheme.

14

**ANSWER:** Defendant Officer Ortiz admits that video recorded by Stokes shows he and his partner retrieving a yellow bag from an alley garbage can, but denies the remaining allegations contained in paragraph 38. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38.

39.     Police reports regarding this incident falsely claim that the officers learned of the location of multiple firearms during the course of a legitimate narcotics investigation.

**ANSWER:** Defendant Officer Ortiz admits that the case incident report states the officers learned of the location of multiple firearms during the course of a narcotics investigation, but denies the remaining allegations contained in paragraph 39. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 39.

40.     Defendant Officer Ortiz's actions were reported on in a media after Stokes filed a lawsuit against Ortiz and the City, Case No. 16-cv-10621.

**ANSWER:** Defendant Officer Ortiz admits that Stokes filed a lawsuit (Case No. 16-cv-10621) against him and the City and that there was media coverage of the lawsuit and Stokes's allegations, but denies any allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 40.

41.     Officer Ortiz's conduct in the Stokes case was also highlighted in the Department of Justice's Investigation of the Chicago Police Department, published January 13, 2017.  The Department of Justice found that the Stokes case was a prime example of how the CPD allows abusive officers like Ortiz to set the culture within the Department:

> A recording from November 2015 appears to capture part of a "guns for freedom" incident on video.  The video is part of a case in which an individual alleges that

police coerced him into producing weapons to gain his own release and the release of a friend.  According to the individual who produced the gun, police first required him to tell them where guns were located, and then demanded that he bring them a gun.  The man claims he had to buy the gun he brought to the police.  The video recording appears to show the man placing the gun in a trash bin and police officers retrieving the gun later than day.  The officers' incident report does not mention any arrest and instead claims that the man directed them to "the location of multiple firearms being hidden in the 5th and 22nd district."

In addition to the likely illegality of this conduct, its impact on community trust cannot be overstated. The fear and anger created by these practices was obvious when we talked with individuals who reported these experiences.  As the attorney for the man in the November 2015 incident noted during a media interview, "if there was any trust that's built up by officers on the street, that trust is clearly and quickly destroyed."  His words underscore what we found more broadly throughout our investigation:  when practices like this are allowed to persist, CPD allows abusive officers to set the culture, undermining the hard work of CPD's many good officers

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Department of Justice Report, but denies the remaining allegations, including any allegations of wrongdoing, contained in paragraph 41. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 41.

42.  Despite Defendant Officer Ortiz's misconduct not only being made public in a federal lawsuit and in the media, but also being singled out by the Department of Justice in its official investigative report, the City once again did nothing.

**ANSWER:** Defendant Officer Ortiz admits he was not disciplined in relation to the *Stokes* case and that Stokes's allegations were the subject of a lawsuit and media coverage, but denies the remaining allegations contained in paragraph 42. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 42.

43.     Instead, the City settled the Stokes lawsuit and allowed Ortiz to remain on the street

**ANSWER:** Defendant Officer Ortiz admits that the *Stokes* lawsuit was settled and that he is employed as a Chicago Police Officer. Defendant Officers Rosario and Collins admit that Officer Ortiz is employed as a Chicago Police Officer, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 43.

### *Williamson Shooting*

44.     On January 1, 2014, Defendant Officer Ortiz fired 11 shots indiscriminately into a home, striking and seriously injuring brothers Michael and Princeton Williamson and their sister Kierra, and grazing Thaddeus Williamson.

**ANSWER:** Defendant Officer Ortiz admits that he fired 11 shots in the direction of Michael Williamson, whom he observed holding a firearm, and that Michael Williamson, Princeton Williamson, and Kierra Williamson were injured and that a bullet grazed Thaddeus Williamson, but deny the remaining allegations contained in Paragraph 44. Defendant Officers further deny any and all allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 44.

45     Michael and Princeton Williamson narrowly escaped death after being shot in the abdomen by Defendant Officer Ortiz. They required emergency surgery and extended hospitalization to save their lives.

**ANSWER:** Defendant Officer Ortiz admits that Michael and Princeton Williamson were shot in the abdomen by Officer Ortiz and that they required surgery and hospitalization. Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 45. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 45.

46.     In order to justify his indiscriminate shooting of four innocent civilians, Defendant Officer Ortiz falsely accused Michael Williamson of taking a "tactical stance" and pointing a gun at him.  This was remarkably similar to Ortiz's attempt to justify the previous Miller shooting by claiming that the victim took a "tactical stance" and pointed a black object in his direction.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 46, and further denies any and all allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 46.

47.     The detective on scene aided in the cover up by fabricating a purported confession from Princeton Williamson.  The detective claimed that he took the statement from Princeton while Princeton was in a hospital bed with an open abdomen and receiving a continuous pump of morphine to deal with his excruciating pain.  As Princeton's nurses later testified, he was not able to talk while in this condition and could not have possibly given a statement.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 47.

48.     As a result of these false claims, Michael and Princeton Williamson were falsely charged with multiple felony offenses.

**ANSWER:** Defendant Officer Ortiz admits that Michael and Princeton Williamson were charged with multiple felonies, but denies the remaining allegations contained in paragraph 48, and further denies any and all allegations of wrongdoing. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48.

49.     Michael Williamson was found not guilty of all charges after spending a year in Cook County Jail.  The criminal court found Officer Ortiz not credible due to the inconsistencies in his version of events, particularly Officer Ortiz's initial admission that he saw approximately five people on the porch and his later claim that the only person he saw on the porch was Michael Williamson.

**ANSWER:** Defendant Officer Ortiz admits that Michael Williamson was found not guilty of all charges, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 49. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 49.

50.     The charges against Princeton Williamson were dismissed after the criminal court threw out the purported confession obtained from Princeton at the hospital.  The criminal court called the purported confession "one of the biggest pieces of garbage I ever heard from a professional member of law enforcement."

**ANSWER:** Defendant Officer Ortiz admits that the charges against Princeton Williamson were dismissed, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 50. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 50.

51.     The Williamson criminal proceedings were reported on in the Chicago Tribune, clearly putting the City on Notice of Defendant Officer Ortiz's misconduct.

**ANSWER:**  Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 51.

52.     Rather than discipline Defendant Officer Ortiz, however, the City encouraged him to continue with his fabricated cover story by conducting an investigation that was deliberately designed to clear Ortiz.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 52. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 52.

53.     During Defendant Officer Ortiz's IPRA statement, the IPRA investigator allowed Officer Ortiz's counsel to audibly whisper to Ortiz fabricated answers to the investigator's questions.

**ANSWER:** Defendant Officer Ortiz admits that his counsel could be heard on the audio recording of Officer Ortiz's IPRA statement, but denies the remaining allegations contained in paragraph 53. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 53.

54.     The IPRA investigator also turned the recorder off and paused Ortiz's statement multiple times to allow Ortiz and his counsel to manufacture responses to the investigator's questions.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 54. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 54.

55.     IPRA found the Williamson shooting justified despite the fact that IPRA: (1) did not interview any of the17 civilian witnesses at the home, including the Williamsons; (2) failed to consider the results of forensic testing, which showed that Michael Williamson did not possess a gun; (3) did not consider evidence and sworn testimony from the criminal proceedings; and (4)

never confronted Ortiz which his inconsistent statements concerning the shooting or the discrepancies between Ortiz's statements and the physical evidence.

**ANSWER:** Defendant Officer Ortiz admits that IPRA found the Williamson shooting justified, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 55. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 55.

56.     The McGuire Woods LLP audit of IPRA, published April 12, 2017, specifically highlighted the deficiencies in the investigation of Defendant Officer Ortiz's shooting of the Williamsons, including the failure to address the inconsistencies in Ortiz's version of events, consider physical evidence, or interview civilian witnesses.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 56.

57.     Yet, even with another high-profile publication highlighting Defendant Officer Ortiz's misconduct, Ortiz was not disciplined and the glaring problems with the IPRA investigation were ignored.

**ANSWER:** Defendant Officer Ortiz admits that he was not disciplined, but denies the remaining allegations contained in paragraph 57. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 57.

58.     On August 9, 2014, Michael Princeton, and Kierra Williamson filed an excessive force suit against Defendant Officer Ortiz and the City, Case No. 14-cv-6397.

**ANSWER:** Defendant Officer Ortiz admits the allegations contained in paragraph 58. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 58.

59. This suit included a *Monell* policy and practice count asserting that the Chicago Police Department's "Code of Silence" shielded Defendant Officer Ortiz from responsibility for his misconduct and caused him to act with impunity in shooting the Williamsons.

**ANSWER:** Defendant Officer Ortiz admits that the lawsuit included the above allegations, and further states that the *Monell* claims were dismissed by stipulation. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 59.

60. The City chose to again support Defendant Officer Ortiz's fabricated version of events and argue to the jury that Ortiz was justified because he saw Michael Williamson point a gun at him.

**ANSWER:** Defendant Officer Ortiz denies the allegations contained in paragraph 60. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 60.

61. The jury rejected Defendant Officer Ortiz's false testimony and returned a $4.75 million verdict for the Williamsons on September 18, 2017. This included a $500,000 award of punitive damages to punish Ortiz and deter from future misconduct.

**ANSWER:** Defendant Officer Ortiz admits that the jury returned the verdict amounts contained in paragraph 61, but denies the remaining allegations and conclusions. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 61.

62. The Williamsons were also awarded nearly $3.5 million in attorneys fees, and the City paid substantial amounts to its outside counsel, as a result of the City's decision to blindly defend Defendant Officer Ortiz's fabricated story.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding attorneys' fees, and denies the remaining allegations contained in paragraph 62. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 62.

63.     Even after the jury verdict, and paying out over $8 million for the Williamson shooting, the City did not take disciplinary action against Defendant Officer Ortiz and continues to allow him to wield police power.

**ANSWER:** Defendant Officer Ortiz admits that he has not been disciplined with respect to the Williamson shooting and that he remains employed as a police officer. Defendant Officers Rosario and Collins admit that Officer Ortiz is a Chicago Police Officer, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 63.

64.     In fact, the City continues to deny reality and maintain that Defendant Officer Ortiz was justified in shooting the Williamsons.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 64. Further answering, Defendant Officer Ortiz denies any allegations of wrongdoing.

65.     In a subsequent malicious prosecution suit filed by Michael Williamson (Case No. 18-cv-2028, the City attempts to avoid the effect of the *Williamson I* verdict by claiming that "the *Williamson I* jury could very well have believed that [Michael Williamson] was holding a firearm at the time of the incident." The City regurgitates the same claims that were rejected by the *Williamson I* jury – that Ortiz saw Plaintiff holding a gun, pointing it in his direction, and refusing commands to drop the gun.

**ANSWER:** Defendant Officer Ortiz admits that Michael Williamson filed a federal unlawful pretrial detention case (18-cv-2028), which is being defended, and that Plaintiff's Motion for Summary Judgment attempting to assert the doctrine of collateral estoppel from the *Williamson I* case was denied. Defendant Officer Ortiz denies any remaining allegations and conclusions contained in paragraph 65. Defendant Officers Rosario and Collins lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 65.

### THIS MATTER IS EMBLEMATIC OF THE CITY'S WIDESPREAD POLICES

66. This matter is emblematic of the City's acknowledged and well-documented policy and practice of covering up and failing to legitimately investigate officer misconduct and failing to discipline officers who engage in misconduct, otherwise known as the Code of Silence.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 66.

67. A number of City officials, including former Mayor Emmanuel, have admitted to the Code of Silence. As Mayor Emmanuel told the City Council in a December 9, 2015 speech:

> This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues… We cannot asks citizens in crime-ravaged neighborhoods to break the code of silence if we continue to allow a code of silence to exist without our own police department.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 67.

68. Former Police Superintendent Richard Brzeczek has publicly stated that a code of silence "has always existed in the police department."

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 68.

69.     In 2000, Alderman Beavers submitted an official resolution recognizing that "Chicago police officers who do not carry out their responsibility in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 69.

70.     Former Patrol Bureau Chief Eugene Williams has explained as follows:

> …The way it is done on the streets is to protect and cover for your partner at all cost, even at the expense of sacrificing every ounce of one's integrity. This culture has been all too evident when we investigate thousands of allegations where the partner of the accused never sees, or hear[s] of any inappropriate conduct although they work in very close proximity of each other during their entire tour of duty. Yet, within this culture it is considered righteous to cut corners and embellish on the facts in a case report or arrest report to win a case in court.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 70.

71.     The operation of the City's Code of Silence can also be seen in a number of other matters involving the City's failure to legitimately investigate police misconduct, such as Officer Jason Van Dyke's fatal 2014 shooting of 17-year-old Laquan McDonald and a slew of lawsuits filed in this district. *See, e.g., LaPorta v. City of Chicago,* No. 14 C 9665, *Cazares v. Frugoli,* No. 13 C 5626; *Marcinczyk v. Plewa,* No. 09 C 1997; *Obrycka v. City of Chicago,* No. 07 C 2372; *Gilfand v. Planey*, No. 07 C 2566; *Johnson v. City of Chicago*, No. 05 C 6545; *Klipfel v. Gonzales,* No. 94 C 6415; *Garcia v. City of Chicago,* No. 01 C 8945.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 71.

72.     In fact, in *LaPorta*, a jury determined that the City maintains *de facto* policies of failing to investigate officers accused of misconduct, failing to discipline officers who deserved it, and failing to maintain an early warning system to identify and correct problematic behavior.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 72.

73.     In *Obrycka*, a jury likewise determined that the City maintains a widespread practice of failing to adequately investigate its police officers and/or tolerating a code of silence within the Police Department.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 73.

74.     The prevalence of the Code of Silence within the Chicago Police Department was summarized in the Department of Justice's January 2017 report, which found that:

(a)     The City, police officers, and leadership within CPD and the police union acknowledge that a code of silence among Chicago police officers exists, extending to lying and affirmative efforts to conceal evidence;

(b)     Officers who simply witness misconduct and face no discipline by telling the truth choose instead to lie to protect other officers;

(c)     The City treats such efforts to hide evidence as ancillary and unexceptional misconduct, and often does not investigate it, causing officers to believe there is not much to lose if they lie to cover up misconduct;

(d)     CPD has historically tolerated unconstitutional force, and has developed a pattern of practice of unconstitutional force as a result of its failure to hold officers accountable;

(e)     CPD has failed to hold officers accountable when they use force contrary to CPD policy or otherwise commit misconduct, resulting in officers remaining with the Department and continuing their misconduct when they should have been relieved of duty;

(f)     CPD's failure to meaningfully and routinely review or investigate officer use of force is a significant factor in perpetuating practices that result in a pattern of unlawful conduct;

(g)     CPD does not hold supervisors accountable for performing basic supervisory tasks, including reporting misconduct. Supervisors generally do not conduct any follow-up investigation or request any additional information from officers to help understand what happened;

(h)     CPD's documentation of officer use of force is consistently insufficient;

(i)     It appears officers have been instructed on the language they should use to justify force with others frequently using the same language in their reports;

(j)     Those cases that are investigated suffer from serious investigative flaws that obstruct objective fact finding, including failure to interview civilian and officer witnesses; inappropriate coordination of testimony, risk of collusion, and witness coaching during interviews; cursory questioning aimed at justifying the officer's actions rather than seeking truth; failure to review and incorporate probative evidence from parallel civil and criminal proceedings; ignoring conflicts in testimony or with physical evidence; exaggerating evidence favorable to the officer; and extensive investigative delays;

(k)     As a result of few force incidents being even nominally investigated, and the low quality of force investigations that do occur, there is no meaningful, systemic accountability for officers who use force in violation of the law or CPD policy;

(l)     The failure to review and investigate officer use of force has helped create a culture in which officers expect to use force and not be questioned about the need for or propriety of that use;

(m)    The Stokes case shows the CPD allows abusive officers like Ortiz to set the CPD culture;

(n)     Due to longstanding, systemic deficiencies in its early intervention systems, the CPD does not adequately and accurately identify officers in need of corrective action and does not consistently or sufficiently address officer behavior even where CPD identifies negative patterns. Because of these failures, CPD officers are able to engage in problematic behaviors with impunity;

(o)     The City paid over a half billion dollars to settle or pay judgments in police misconduct cases since 2004 without conducting disciplinary investigations

27

in over half of those cases, and only recommending discipline in fewer than 4% of the cases it did investigate.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 74.

75.     The City's Police Accountability Task Force Report, published in April 2016, similarly found that:

(a)     The statistics give real credibility to the widespread perception that there is a deeply entrenched code of silence supported not just by individual officers, but by the very institution of CPD itself;

(b)     The only conclusion that can be reached is that there is no serious embrace by CPD leadership of the need to make accountability a core value;

(c)     IPRA failed to perform its work fairly, competently, or with rigor or independence, and demonstrated a record of incomplete and botched investigations;

(d)     The City has sent a clear message that bad police officers are able to act with impunity and that police oversight bodies do not hold police officers accountable;

(e)     When case after high-profile case results in punishment that does not match the gravity of the misconduct, it sends a message that the police can act with impunity and leaves those who break the rules emboldened to continue doing so;

(f)     The City has largely ignored information regarding officer misconduct developed in civil rights litigation;

(g)     There continues to be an unacceptably high number of lawsuits filed against the city and individual officers every year.  Despite the persistent problem, which results in the outlay of tens of millions of dollars every year, CPD does not employ a systematic tool for evaluating risk issues identified in lawsuits.

**ANSWER:**  Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 75.

76.     The McGuire Woods report also echoed the Department of Justice's findings regarding IPRA, including reporting the following deficiencies in IPRA's investigation of Defendant Officer Ortiz's shooing of the Williamsons:

(a)     Failing to create a scene diagram and take measurements in a case involving an officer who fired shots that hit multiple individuals, projectiles recovered in numerous locations, and bullet holes identified in multiple places on a porch and in a residence;

(b)     Failing to obtain a trajectory analysis to determine the position and distance of the officer at the time of the firing;

(c)     Failing to interview witnesses, including an individual with a visible injury;

(d)     Failing to question the officer about inconsistent statements regarding who was present around the time of the shooting where the officer had previously maintained that multiple people were present, but later stated that only one person was present;

(e)     Failing to question the officer regarding evidence that the subject's weapon was recovered in slide lock position when the officer's statement indicated that he saw the subject point the weapon at him out of slide lock position;

(f)     Failing to confront the officer with photographs contradicting his version of events;

(g)     Failing to evaluate the potential danger to bystanders or fellow officers;

(h)     Failing to consider the excessiveness of the shooting when there was no return fire.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 76.

77.     While the City claims to have implemented reforms in response to the well-publicized findings regarding the Code of Silence, such as replacing IPRA with the Civilian Office of Police Accountability, these measures have not addressed the problem.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 77.

29

78.     The City has not disciplined Ortiz or reviewed any of the glaring deficiencies in its previous investigations, and continues to allow Ortiz to wield a gun and a badge even though Defendant Officer Ortiz himself was singled out not only in the Department of Justice report for his conduct in the Stokes case, but also in the McGuire Woods report for his conduct in the Williamson shooting.

**ANSWER:** Defendant Officer Ortiz admits that he has not been disciplined and that he remains employed as a police officer. Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 78. Defendant Officers Rosario and Collins admit that Officer Ortiz is a Chicago Police Officer, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 78.

79.     The impunity afforded to officers like Defendant Officer Ortiz is also clearly demonstrated by the fact that Ortiz and Unknown Officers openly beat Plaintiff in a police station, laughed while doing so, and conspired with Defendant Officers Rosario and Collins to fabricate police reports covering up their misconduct.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but deny the remaining allegations contained in paragraph 79, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

80.     Far from addressing the problem, the City continues to deny reality and defend thoroughly discredited officers like Defendant Officer Ortiz at every turn – telling the public one thing, but practicing entirely another.

**ANSWER:** Defendant Officers deny the allegations contained in paragraph 80.

## COUNT I – 42 U.S.C. § 1983 EXCESSIVE FORCE
### (Against Defendant Officer Ortiz and Unknown Officers)

81.     Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:** Defendant Officer Ortiz incorporates his answers to Paragraphs 1-80 as though fully set forth herein.

82.     The acts of Defendant Officer Ortiz and Unknown Officers in beating Plaintiff were a deliberate and malicious deprivation of Plaintiff's rights against excessive force guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 82, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

83.     As a direct and proximate result of the unreasonable and unjustifiable force used by Defendant Officer Ortiz and Unknown Officers, Plaintiff suffered serious injuries, including a seriously injured shoulder, swelling and bruising, lacerations, disfigurement, pain and suffering since June 14, 2019 and continuing into the future, loss of enjoyment of life, mental and emotional anguish, and lost wages.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 83, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

WHEREFORE, Defendant, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, respectfully requests that this Court enter judgment in his favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983 CONSPIRACY
### (Against All Individual Defendants)

84.     Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:** Defendant Officers Ortiz, Rosario, and Collins incorporate their answers to Paragraphs 1-80 as though fully set forth herein.

85.     Defendants reached an agreement and conspired with each other to cover up Defendant Officer Ortiz and Unknown Officer's use of excessive force.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but deny the remaining allegations contained in Paragraph 85, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

86.     Defendants took overt acts in furtherance of the conspiracy that included preparing false police reports, failing to document and misrepresenting Plaintiff's injuries, turning a blind eye, and failing to report Defendant Officer Ortiz and Unknown Officers' misconduct despite a duty to do so.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but deny the remaining allegations contained in Paragraph 86, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

87.     This misconduct described in this count was malicious, willful, wanton and/or undertaken with reckless indifference to Plaintiff's rights.

**ANSWER:** Defendant Officers deny the allegations contained in Paragraph 87, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

88.     As a direct and proximate result of the Defendants unlawful conspiracy, Defendant Officer Ortiz and Unknown Officers were enabled to cause Plaintiff serious injuries, including a seriously injured shoulder, swelling and bruising, lacerations, disfigurement, pain and suffering since June 14, 2019 and continuing into the future, loss of enjoyment of life, mental and emotional anguish, and lost wages.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but deny the remaining allegations contained in Paragraph 88, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

WHEREFORE, Defendants, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, CHICAGO POLICE OFFICER MARIBEL ROSARIO, STAR #13512, and CHICAGO POLICE OFFICER RUPERT COLLINS, STAR #4430, respectfully request that this Court enter judgment in their favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

## COUNT III – ASSAULT AND BATTERY
### (Against Defendant Officer Ortiz, Unknown Officers, and the City)

89.     Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:** Defendant Officer Ortiz incorporates his answers to Paragraphs 1-80 as though fully set forth herein.

90. Defendant Officer Ortiz and Unknown Officers, with intent to do bodily harm to Plaintiff, viciously assaulted and battered Plaintiff by striking him with a baton and delivering multiple kicks to his face and about his body.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 90, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

91. The conduct of Defendant Officer Ortiz and Unknown Officers was malicious, willful, and wanton.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 91, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

92. As a direct and proximate result of Defendant Officer Ortiz and Unknown Officers' conduct, Plaintiff suffered serious injuries, including a seriously injured shoulder, swelling and bruising, lacerations, disfigurement, pain and suffering since June 14, 2019 and continuing into the future, loss of enjoyment of life, mental and emotional anguish, and lost wages

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 92, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

93. Defendant Officer Ortiz and Unknown Officers engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior*.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers." Defendant Officer Ortiz admits that he was acting within the scope of his employment as a Chicago Police Officer at all relevant times and further admits that Illinois law provides that public entities are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment. Officer Ortiz denies the remaining allegations contained in Paragraph 93, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

WHEREFORE, Defendant, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, respectfully requests that this Court enter judgment in his favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Officer Ortiz, Unknown Officers, and the City)

94. Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:** Defendant Officer Ortiz incorporates his answers to Paragraphs 1-80 as though fully set forth herein.

95. The conduct of Defendant Officer Ortiz and Unknown Officers in beating Plaintiff without any provocation or justification while Plaintiff was handcuffed on the ground was extreme and outrageous.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining

allegations contained in Paragraph 95, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

96.     Defendant Officer Ortiz and Unknown Officers intended to cause or were in reckless disregard of the substantial probability that their conduct would cause severe emotional distress to Plaintiff.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 96, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

97.     Defendant Officer Ortiz and Unknown Officers did directly and proximately cause severe emotional distress to Plaintiff.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but denies the remaining allegations contained in Paragraph 97, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

98.     Defendant Officer Ortiz and Unknown Officers engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior*.

**ANSWER:** Defendant Officer Ortiz lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers." Defendant Officer Ortiz admits that he was acting within the scope of his employment as a Chicago Police Officer at all relevant times and further admits that Illinois law provides that public entities are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her

36

employment. Officer Ortiz denies the remaining allegations contained in Paragraph 98, and further denies any and all allegations of wrongdoing and violations of Plaintiff's rights.

WHEREFORE, Defendant, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, respectfully requests that this Court enter judgment in his favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

## COUNT V- STATE LAW CONSPIRACY
### (Against All Defendants)

99.     Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:** Defendant Officers incorporate their answers to Paragraphs 1-80 as though fully set forth herein.

100.     Defendants reached an agreement and conspired with each other to cover up Defendant Officer Ortiz and Unknown Officer's use of excessive force.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations that "Unknown Officers" used excessive force, but deny the remaining allegations contained in Paragraph 100, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

101.     Defendants took over acts in furtherance of the conspiracy that included preparing false police reports failing to document and misrepresenting Plaintiff's injuries, turning a blind eye, and failing to report Defendant Officer Ortiz and Unknown Officers' misconduct despite a duty to do so.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations that "Unknown Officers" engaged in misconduct, but deny the

remaining allegations contained in Paragraph 101, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

102.    The misconduct described in this count was malicious, willful, wanton and/or undertaken with reckless indifferent to Plaintiff's rights.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations that "Unknown Officers" engaged in misconduct, but deny the remaining allegations contained in Paragraph 102, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

103.    As a direct and proximate result of the Defendants' unlawful conspiracy, Defendant Officer Ortiz and Unknown Officers were enabled to cause Plaintiff serious injuries, including a seriously injured shoulder, swelling and bruising, lacerations, disfigurement, pain and suffering since June 14, 2019 and continuing into the future, loss of enjoyment of life, mental and emotional anguish, and lost wages

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations regarding "Unknown Officers," but deny the remaining allegations contained in Paragraph 103, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

104.    Defendants engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior.*

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief about the truth of the allegations that "Unknown Officers" engaged in misconduct. Defendant Officers admit that they were acting within the scope of their employment as Chicago Police Officers at all relevant times and further admit that Illinois law provides that public entities are liable for

compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment. Defendant Officers deny the remaining allegations contained in Paragraph 104, and further deny any and all allegations of wrongdoing and violations of Plaintiff's rights.

WHEREFORE, Defendants, CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, CHICAGO POLICE OFFICER MARIBEL ROSARIO, STAR #13512, and CHICAGO POLICE OFFICER RUPERT COLLINS, STAR #4430, respectfully request that this Court enter judgment in their favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

## COUNT VI – INDEMNIFICATION
### (Against the City)

**Defendant Officers Ortiz, Rosario, and Collins make no answer to this COUNT VI of the Complaint as this Count is not directed to them. To the extent these allegations are directed toward Defendant Officers, Defendant Officers admit that at all times they acted within the scope of their employment as Chicago Police Officers, but deny any wrongful conduct and violations of Plaintiff's rights, and further deny Plaintiff is entitled to any recovery.**

105.    Plaintiff realleges and reincorporates Paragraphs 1 through 104 as though set forth fully herein.

**ANSWER:**

106.    In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.  735 ILCS 10/9-102.

**ANSWER:**

107.    Defendants were employees of the City of Chicago and acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**

## COUNT VII – *MONELL* LIABILITY
### (Against the City)

**Defendant Officers Ortiz, Rosario, and Collins make no answer to this COUNT VII of the Complaint as this Count is not directed to them. To the extent any such allegations are directed to these Defendant Officers, they are denied.**

108.     Plaintiff realleges and reincorporates Paragraphs 1 through 80 as though set forth fully herein.

**ANSWER:**

109.     The Chicago Police Department is a subsidiary division of Defendant City of Chicago.  The City maintains and exercises exclusive control over the Department, its policies and procedures, as well as the conduct of all of its employees, including Defendants.

**ANSWER:**

110.     At the time of this incident and prior thereto, there existed within the Chicago Police Department as widespread and well-documented policy and practice of covering up and turning a blind eye to officer misconduct, and failing to legitimately investigate or discipline officers who engaged in misconduct, otherwise known as the Code of Silence.

**ANSWER:**

111.     There likewise existed a widespread policy and practice of failing to maintain adequate early warning policies or procedures that would identify officers who engage in misconduct, like Defendant Officer Ortiz, and divert them to appropriate training and discipline.

**ANSWER:**

112.     These widespread policies and practices are well known to, tolerated by, and/or enforced by policymakers throughout all levels of the Police Department and the City

administration, who have yet to take effective measures to address the systemic problems related to the Department.

**ANSWER:**

113.     As a result of these policies and practices, the City allows officers to act with impunity in using excessive force and otherwise engaging in misconduct, knowing that their fellow officers, supervisors, and City officials will turn a blind eye to and cover up their actions.

**ANSWER:**

114.     Otherwise well-intentioned officers who would face no discipline for simply telling the truth frequently like to protect officers who engaged in misconduct.

**ANSWER:**

115.     These policies and practices were the direct and proximate cause of, and the moving force behind, the vicious beating of Plaintiff and the conspiracy among the Defendant Officers that enabled Defendant Officer Ortiz and Unknown Officers to carry out Plaintiff's beating with impunity.

**ANSWER:**

116.     The Defendant Officers engaged in this egregious misconduct knowing they would not be questioned or disciplined and that their fellow officers, supervisors, and City Officials would turn a blind eye to and cover up their actions.

**ANSWER:**

117.     The City's failures and refusal to legitimately address officer misconduct, including excessive force, demonstrates a deliberate indifference to and tacit approval of the use of excessive force by members of its Police Department, including the use of excessive force and conspiracy to use excessive force by Defendants against Plaintiff.

**ANSWER:**

118.   As a direct and proximate result of the City's unconstitutional policies and practices, Plaintiff suffered serious injuries, including a seriously injured shoulder, swelling and bruising, lacerations, disfigurement, pain and suffering since June 14, 2019 and continuing into the future, loss of enjoyment of life, mental and emotional anguish, and lost wages.

**ANSWER:**

## AFFIRMATIVE DEFENSES

Without waiver of any of the denials in the above paragraphs, Defendants CHICAGO POLICE OFFICER WILFREDO ORTIZ, STAR #9748, CHICAGO POLICE OFFICER MARIBEL ROSARIO, STAR #13512, and CHICAGO POLICE OFFICER RUPERT COLLINS, STAR #4430, by and through their attorneys, QUERREY & HARROW, LTD, assert the following Affirmative Defenses to Plaintiff's Complaint:

1.   Defendant Officers are government officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, reasonable police officers, objectively viewing facts and circumstances then confronting Defendant Officers during the incident which allegedly provides the basis for the present case, could have reasonably believed the actions taken by them were objectively reasonable and were within the constitutional limits that were clearly established at the time. Defendant Officers, therefore, are entitled to qualified immunity.

2.   As to any state law claim, under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because the actions of Defendant Officers with respect to Plaintiffs were based upon the information and circumstances known to those Defendant Officers at the time and were discretionary for which they are immune from liability.  745 ILCS 10/2-201.

3.   As to any state law claim, under the Illinois Tort Immunity Act, Defendant Officers are not liable for any claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

4.   As to any state law claim, under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee, as such, and acting within the scope of his or her employment, is not liable for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

5.   Plaintiff is not entitled to attorney's fees for his state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp*., 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 76 Ill. 2d 154, 166, 390 N.E.2d 859, 856 (1979).

6.   An award of punitive damages would deprive the Defendant Officers of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where:

(a)     liability for punitive damages has not been proven beyond a reasonable doubt, or at least by clear and convincing evidence; and

(b)     the award of punitive damages is disproportionate to actual damages.

## JURY DEMAND

Defendant Officers demand a trial by jury.

43

Respectfully submitted,

Defendants, CHICAGO POLICE OFFICERS WILFREDO ORTIZ, STAR #9748, MARIBEL ROSARIO, STAR #13512, and RUPERT COLLINS, STAR #4430,

BY: */s/ Larry S. Kowalczyk*

Special Assistant Corporation Counsel

Larry S. Kowalczyk- Special Assistant Corporation Counsel - lkowalczyck@querrey.com
Megan K. Monaghan Special Assistant Corporation Counsel – mmonaghan@querrey.com
QUERREY & HARROW, LTD.
120 N. LaSalle Street, Suite 2600
Chicago, IL 60602
(312) 540-7000
Email: lkowalczyk@querrey.com
Email: mmonaghan@querrey.com
*Counsel for Defendant Officers*